## RED WARRIOR COAL & MINING CO., Inc. v. BORON.

### No. 10559.

United States Court of Appeals Third Circuit.

Argued Jan. 11, 1952.

Decided Feb. 7, 1952.

As Amended on Denial of Rehearing March 10, 1952.

Harry Savage, Pittsburgh, Pa. (Margiotti & Casey, Pittsburgh, Pa., on the brief), for appellant.

S. G. Pugliese, Pittsburgh, Pa. (Carl A. Belin, Clearfield, Pa., on the brief), for appellee.

Before GOODRICH, KALODNER and HASTIE, Circuit Judges.

GOODRICH, Circuit Judge.

This is an appeal from the judgment dismissing plaintiff's case with prejudice. Plaintiff says that the dismissal in this fashion went beyond judicial discretion and deprived him of his day in court.

The occasion for the appeal arises out of an effort to try to clear the very congested docket in the Western District of Pennsylvania. Charged as we are with the responsibility for the administration of justice in federal courts in our Circuit,[1] the members of this court judicially know what the situation there has been. The court was undermanned. Two of the judges had died, there was delay in filling the posts. Through the co-operative cour-

1. As members of the Judicial Council for this Circuit we are charged with responsibility for the effective and expeditious administration of the business of the Courts in the Circuit. 28 U.S.C. § 332.

tesy of judges from other circuits an effort was made by the Chief Judge of this Court and the Chief Justice of the United States to get judicial help to relieve the situation.

The facts out of which this appeal grew took place in the fall of 1950. The plaintiff's case had been pending since 1947. It had been listed as ready for trial on four former occasions but had not been tried. There is no basis for attributing this to any fault of the plaintiff. We know what the state of the Western District's docket was. We have no reason for thinking that the failure to try this case earlier was due to anything but that docket congestion.

In September, 1950 a list was prepared. The lawyer who did not want his case on the daily list was directed by court rule to take immediate steps about it.[2]

The plaintiff's case was on the list.

The case was in charge of Mr. Vincent M. Casey who was taken ill without warning about October 6, 1950, and was confined to the Bradford, Pennsylvania, hospital for ten days. Arrangements were made to take five Baltimore and Ohio railroad cases from the list to await Mr. Casey's recovery. Mr. Casey and the other members of his firm represent the Baltimore and Ohio in many pieces of litigation in the Western District.

On October 10th when the call was made with the daily list, Miss Scigliano from Mr. Casey's office told the court of Mr. Casey's illness and Mr. Pugliese, representing the defendant, told the court at that time that he would like to have the case go over until October 23rd because of his commitment to represent a defendant in a capital case before the Board of Pardons in the week of October 16th. The Court then said, "I will not direct the clerk to continue it. If the clerk has other cases that he can put in before this, I will suggest that he do that, but I can't continue this case. The lawyers may think I am severe, but three or four months from now you will appreciate it."

Mr. Harry Savage, a partner of Mr. Casey, was assigned this case. He had no previous knowledge of it whatever. On October 11th Mr. Savage had a talk in the office of the clerk of the court, Mr. Stephen Laffey. Mr. Laffey told him, after the facts were stated to him, that the case would be put over until October 23rd. Following this conversation Mr. Savage advised the president of the plaintiff corporation, who was in Los Angeles, California, of his understanding with the clerk. On the following day, this arrangement was confirmed at a meeting between the clerk, Mr. Savage and Mr. Pugliese.

Later that morning the case which preceded the plaintiff's case on the list was settled. Mr. Savage receivced a telephone call from the court's clerk. He and Mr. Pugliese went to open court presided over by the Chief Judge. They were told that if some other case could not be found to be assigned to the visiting judge plaintiff's case would have to go on. Evidently no other case could be found. The presiding judge told the clerk and the lawyers that the administration of the list was the clerk's business. But he evidently overruled the clerk in the arrangement whereby this case was to go over for some ten days.

In the meantime, Mr. Savage had reached his witness in Los Angeles and directed him to get back immediately. He received a wire from the witness stating he was taking the first plane to Pittsburgh. This plane, had it been on time, would have brought him into Pittsburgh at 9:55 A.M. on October 13th.

In the meantime, on the afternoon before, the case having been assigned to the visiting judge, counsel were directed to impanel a jury which they did. Mr. Savage begged off from making an opening statement saying that his witness was on the way and would be on hand the following morning. When the following morning came, the witness was late because his plane was delayed. Mr. Savage had no opening state-

2. Rule VIII, § 3(c) of Rules of United States District Court for the Western District of Pennsylvania: "An application to keep a case off a daily list must be for cause and shall be made before the daily list is prepared. After a case has

ment to make because he did not know the case and had not seen the witness. He could neither open nor proceed after opening. The judge suggested that opposing counsel move for dismissal with prejudice. The motion was made and granted. He suggested that Mr. Savage move for dismissal of the counterclaim with prejudice and that was done. That motion too was granted. The judgment was entered and the plaintiff's motion for setting aside the judgment and reconsideration was denied eight months later.[3]

The above recited facts are all supported by affidavit. The colloquies between judge and counsel appear, of course, as part of the stenographic record of the proceedings. We have no reason to disbelieve statements of fact about the case made to this court under oath by a member of the bar in good standing.

The result reached by the court below is not a satisfactory one. If, as the Chief Judge said, the clerk was charged with the duty of administering the lists, an agreement made by him with counsel about a given case should have been followed regardless of whether the agreement was a desirable one to have made in the first place. It puts an unfair pressure on counsel when they rely upon the clerk's commitment and then have that commitment fail. That seems to be what happened here. When the case was finally assigned to the visiting judge to try, there was nothing he could do except dismiss if the parties were not prepared to go ahead. He had

nothing to do with the listing of cases. He was simply there to take what was sent to him.

If a lawyer makes a good faith commitment to his client on the basis that the clerk of court has said a given case will be put on for trial on a given date in the future the lawyer should not be compelled to try the case the next morning. That is what happened here according to Mr. Savage's recital and that recital is substantially re-enforced by all that happened in the subsequent colloquies between the parties.[4] Our conclusion is that the dismissal with prejudice was too harsh. It may well have been that a proper course would have been to permit the plaintiff to dismiss voluntarily, as he asked to do, but, we are advised, it is too late for that now since the statute of limitations has run on the original claim. We think fairness demands that the case be reinstated.

However, the plaintiff's claim should not be reinstated for trial and the defendant's counterclaim not reopened for examination also. The defendant has not appealed from the judgment against him on his counterclaim. He appeared to be satisfied to call the whole thing off through dismissing both the complaint and counterclaim with prejudice. The defendant is therefore entitled to his day on the counterclaim if the plaintiff is to have a day in court on his original claim.

This court has equitable powers. Equity judges have from the beginning shown

---

been placed on the daily trial list, it shall not be removed therefrom without further order of court."

3. The judgment of dismissal was entered on Nov. 2, 1950; opinion and order overruling plaintiff's motion to vacate or modify the judgment was filed July 16, 1951. This motion tolled the thirty-day period for filing notice of appeal from the judgment of November 2. See Fed. Rules Civ.Proc. rule 73(a), 28 U.S.C.

4. On October 12, 1950 counsel for plaintiff called these facts to the attention of Judge Gourley at 12:45 P.M. At this hearing Judge Gourley told the clerk, "It is your job to run this list * * * what you do is your own business. This Court will recess."

On the same day in the hearing before Judge Fee counsel for plaintiff called the court's attention to the clerk's repudiation of the agreement. Judge Fee commented, "Well, I don't think you have any right to rely on anything except a written order."

At the hearing before Judge Fee on October 13, counsel for defendant alluded to the agreement and its repudiation. (N.T. p. 15.)

At the same hearing counsel for plaintiff asked, "Am I to understand, Your Honor, that an attorney practicing in this District Court has no right or cannot rely on an assurance given by the Clerk of Courts, who has charge of the official trial list—?" The Court replied, "Absolutely."

ability to fashion their decrees in a form to accomplish fairness. Reversal of the judgment against the plaintiff and the direction to reinstate his case to be tried, is to be conditioned upon the plaintiff's entering into a stipulation, or offering to do so, to vacate the judgment dismissing the counterclaim, thus restoring it to its former status. If this is done, the District Court is directed to restore both complaint and counterclaim to the docket for trial.

The judgment will be reversed on the condition above stated and the case remanded to the District Court for further proceedings consistent with this opinion.